UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK ANTHONY REED-BEY,

        Plaintiff,

                                        No. 13-10168

-vs-                              District Judge Avern Cohn
                                  Magistrate Judge R. Steven Whalen

VICKI LEWIS, ET AL.,

        Defendants.

_____ /

## REPORT AND RECOMMENDATION

Plaintiff Mark Anthony Reed-Bey, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), has filed a *pro se* civil complaint under 42 U.S.C. § 1983. Before the Court is a motion to dismiss [Doc. #51] filed by Defendants Vicki Lewis and Nola Fettig, which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). The Defendants argue for dismissal on the basis that Plaintiff did not exhaust his administrative remedies before filing his complaint, as required by 42 U.S.C. § 1997e(a). For the reasons discussed below, I recommend that the motion be DENIED.

## I.    FACTS

Plaintiff, an MDOC inmate, was transferred to the Gus Harrison Correctional Facility ("ARF") on or about December 5, 2011. He alleges that Defendant Lewis, a Corrections Officer, told him that he could not keep the Cortech box that contained some

-1-

of his property, and that the contents of the box would either need to be sent home or destroyed. *Complaint* [Doc. #1], ¶¶ 3,5. Lewis later told Plaintiff that he could not have his property until a hearing was held. *Id*. ¶ 11. A property hearing was held on December 14, 2011, conducted by Defendant Lewis. *Id*. ¶ 12. At the hearing, Plaintiff told Laing that he, not Lewis should be conducting the hearing, because Lewis had written the Notice of Intent ("NOI"). *Id*. ¶ 18. According to Plaintiff, Lewis told Defendant Laing, another Corrections Officer, that Plaintiff's footlocker had an altered number, that a television, radio, and typewriter were also altered, and that Plaintiff had too many cassette tapes. *Id*. ¶ 19. However, Plaintiff states that Lewis told him he would be permitted to have the Walkman, the 24 tapes, and some of his legal papers, "but that he was not allowed to take them on that day because they had not completed the hearing...." *Id*. ¶ 20.

The following day, December 15, 2011, Plaintiff spoke to Deputy Warden Chapman, and complained "about the fact that defendant Lewis who had written the notice of intent was conducting the hearing and not defendant Laing." *Id*. ¶ 21. Chapman told the Plaintiff that he "would call to find out what was happening which he did as to plaintiff was standing there." *Id*. ¶ 22. Then, on December 16th, Plaintiff was called out for the continuation of the hearing. He alleges that he was "confronted" by Defendant Fettig, who told him he was not getting his footlocker. *Id*. ¶ 23. Fettig told Plaintiff that she knew that he had spoken to Deputy Warden Chapman about not wanting Lewis to conduct the hearing, but that "she wanted her to continue assisting." *Id*. ¶ 24. Plaintiff

-2-

states that "Defendant Lewis took 90% of all the property that was in the plaintiff's duffle bag property...because he had complain[ed] to the Deputy Warden about her illegal actions concerning the hearing." *Id*. After the hearing, Plaintiff asked Laing about his Walkman and tapes, but was told that Lewis denied that request because "there was nothing showing on his accounting statements where he had purchased a walkman or tapes." *Id*. ¶ 27.

Around January 10, 2012, Plaintiff complained to Warden's Administrative Assistant Virgil Webb that Lewis should not have conducted the hearing because she was the person who wrote the NOI to confiscate the property. *Id*. ¶ 31.  At this time, Webb told the Plaintiff that on December 16, 2011, Lewis had written a minor misconduct ticket against him, but because Plaintiff had not been given the opportunity to review the ticket, "it wasn't any good." *Id*. ¶ 32. On January 12, 2012, Fettig informed the Plaintiff that she was going to conduct another hearing on his property. The Plaintiff informed her that he had filed a complaint against her, "and that she was just trying to cover-up her illegal actions." *Id*. ¶ 34.

Another property hearing was held on January 12, 2012.  However, Plaintiff elected not to attend.  *Id*. ¶ 35.  The hearing was conducted by Defendant Fettig.  *Id*. ¶¶ 34-35.  Plaintiff never received any of the property that was taken.  *Id*. ¶ 29.

Plaintiff claims a due process violation based on the non-return of his property, and also claims that his property was disposed of in retaliation for his complaining about

-3-

the unfairness of the property hearing.

On January 31, 2014, I issued an R&R in which I recommended that the complaint be dismissed as to Defendants Laing and Lewis [Doc. #18]. On February 26, 2014, the Honorable Avern Cohn overruled Plaintiff's objections to the R&R, and dismissed Laing and Lewis [Doc. #23]. On November 5, 2014, I issued a second R&R in which I recommended dismissing Defendant Fettig [Doc. #42]. That R&R was adopted, and Fettig was dismissed on January 14, 2015 [Doc. #44].

A panel of the Sixth Circuit affirmed the dismissal of Plaintiff's due process claim, but reversed the dismissal of the retaliation claims against Defendants Lewis and Fettig [Doc. #59]. These are the only two claims that remain.

Defendants now move to dismiss the complaint based on Plaintiff's alleged failure to exhaust the retaliation claims before filing suit in this Court.

## II.   LEGAL PRINCIPLES RE: EXHAUSTION

Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12(2002); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 1825,

-4-

149 L.Ed.2d 958 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92, 126 S.Ct. 2378, 2387,165 L.Ed.2d 368 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id.*, 548 U.S. at 90, 126 S.Ct. at 2385.   Thus, whether a claim is "properly exhausted" under the PLRA requires an examination of the particular institution's administrative rules and regulations regarding prisoner grievances.

However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Under *Jones*, it is Defendant's burden to assert non-exhaustion as an affirmative defense. *Id.*; *Grinter v. Knight,* 532 F.3d 567 (6th Cir.2008)*.  Jones v. Bock* overruled a long line of Sixth Circuit cases that placed the burden of pleading and supporting exhaustion on plaintiffs.

## III.   DISCUSSION

MDOC Policy Directive (PD) 03.02.130 provides prison inmates a detailed procedure for bringing forward complaints.[1]  This grievance procedure consists of four acts an inmate must undertake prior to seeking judicial review, each with specific time limits.  First, within two business days after becoming aware of a grievable issue, the inmate must attempt to verbally resolve the dispute with those involved.  If such an

---

[1] PD 03.02.130 is reproduced in Exhibit A to Defendants' Motion.

attempt is not possible, or if it is unsuccessful, the inmate must then file a Step I grievance form within five days. The prison staff is required to respond in writing within 15 days, unless an extension is granted by the grievant. If the inmate is not satisfied with the response, he must request a Step II appeal form and file it within ten days after receiving the Step I response.

If the inmate is dissatisfied with the result at Step II, he or she has ten business days to appeal to Step III. The Step III appeal is handled by the MDOC Director or his designee at the Prisoner Affairs Section, Office of Program Services, in Lansing, Michigan. The Step III response concludes the standard administrative process.

On December 19, 2011, Plaintiff filed Grievance No. N ARF 2011 12 4619 07A.[2] The Defendants do not dispute that Plaintiff took this grievance through Step III of the administrative process. However, they argue that this grievance dealt with the substantive issue of whether Plaintiff's property was improperly taken, not with the issue of retaliation, and therefore his retaliation claims have not been exhausted.

It is true that Plaintiff does not mention the word "retaliation" in his grievance, and his narrative is not a model of clarity. But that is not the test.  MDOC P.D. 03.02.130(T) sets forth the necessary content of a grievance:

> "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included."

---

[2] Attached to Defendants' motion as Exhibit B-3.

"The MDOC policy does not contain a precise description of the necessary degree of factual particularity required of prisoners." Rather, "a grievant need only 'object intelligibly to some asserted shortcoming' and need not 'lay out facts, articulate legal theories, or demand particular relief.'" *Davison v. MacLean*, 2007 WL 1520892, *5 (E.D.Mich.2007) (Cohn, J.); citing to *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir.2003), abrogated on other grounds by *Jones v. Bock*, *supra*.

In substance, this grievance states facts that sufficiently exhaust the retaliation claims under MDOC policy.  At Step I, the grievance states the "date of incident" as 12-14-11 and 12-16-11, which corresponds to the to dates of the first and second property hearings. Plaintiff states at Step I that prior to filing the grievance, he informed both Lewis and Fettig that he would be doing so. Plaintiff states that the first administrative hearing took place on December 14 with Lewis, who told him he could not have certain property. The grievance indicates that Plaintiff spoke to Deputy Warden Chapman the next day, December 15 and "informed him what was happening." Then, on December 16, he was called for the second hearing, where Lewis was "still acting as if she was the hearing officer." Thus, at Step I, Plaintiff complains that Lewis improperly acted as the hearing officer, and improperly denied him his property, but also states that (1) he complained to the Deputy Warden after the first hearing but before the second hearing, and (2) he informed both Lewis and Fettig that he "would be filing this complaint," thus putting them on notice of his intent to pursue a First Amendment protected remedy. As

-7-

the Sixth Circuit noted in its opinion, the very short time between a complaint (in this instance to the Deputy Warden) and a hearing the following day can support a claim of retaliation.

Apparently not receiving a timely Step I response, Plaintiff proceeded to Step II, where he even more clearly states facts pertinent to his retaliation claims. The Step II appeal was dated January 25, 2012, which was after the third hearing on January 12th, where Fettig presided. Plaintiff stated as follows:

> "On 1-12-12, RUM Fettig who is named as a principle violator in two criminal complaints concerning my property one Declaratory Notice, one complaint that was forwarded to the DOC Internal Affairs Department by the Michigan State police on 1-6-12, tried to whole [sic, hold] an administrative hearing, to cover her first illegal action, I did not stay, but received a copy of the hearing that was held without me, where she stated I made a statement which I didn't, and that my property is to [be] disposed of per policy."

I should note that this is not a situation where Plaintiff is naming Fettig for the first time at Step II. As I noted earlier, both Lewis' and Fettig's names appear in the Step I grievance. While it is true that the Step II appeal refers to the third administrative hearing, which occurred after the Step I grievance was filed, all three hearings dealt with the same property, and were part of a continuing series of events that Plaintiff claims involved improper and retaliatory actions. It appears that the January 12, 2012 hearing was occasioned by Plaintiff's complaints as expressed in his grievance. The Step II response, in fact, specifically notes, "On January 12, 2012 RUM Fettig conducted an administrative hearing in accordance with administrative rules 791.3305, 791.3310 and 791.5501."

-8-

Thus, the MDOC itself did not find that Plaintiff was raising a new issue at Step II, but rather, by substantively addressing the January 12th hearing, found that it was inextricably related to the issues raised at Step I. Further, the Step III grievance response states that "materials included with your appeal from Step II [have] been fully reviewed and considered," and that "[t]he responses you received at Steps I and II reflect that your issues were in fact considered and appropriately responded to at the facility level."

So even if Plaintiff's grievance were considered deficient at Step I as to retaliation claims arising out of any of the three administrative hearings, the MDOC waived the deficiency by actually considering the claims (and the facts supporting the claims) on the merits. In *Spruill v. Gillis*, 372 F.3d 218 (3rd Cir. 2004), the Court held that despite an inmate's failure to include a particular defendant by name in his grievance, the claim against that defendant was properly exhausted because the hearing officer nonetheless found that the defendant was "involved in the events that the [plaintiff] complained of." *Id*. at 234. *Spruill* held that to excuse a so-called procedural default in the grievance process, "a prison must only 'identif[y] the unidentified persons and acknowledg[e] that they were fairly within the compass of the prisoner's grievance.'" *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007)(quoting *Spruill* at 234). The MDOC did exactly this in Plaintiff's case. The Step II response referenced both Reed and Fettig. The Step III response stated that all of Plaintiff's materials from Step II were considered; this would include his Step II appeal that specifically laid out facts

-9-

supporting a claim of retaliation.

Defendants rely on *Jordan v. Harrington*, 2006 WL 1791261 (E.D. Mich. 2006), where Magistrate Judge Scheer found that a claim of retaliation is distinct from a claim based on the underlying "adverse action," and that while the plaintiff had exhausted the latter, he had not exhausted the former. However, *Jordan* is distinguishable from this case because in *Jordan*, the plaintiff did not set forth any facts or claims in his grievances that his mistreatment was related to his having filed a previous lawsuit or grievance against the defendant Corrections Officer. Judge Scheer stated, "Since retaliation is a separate form of misconduct or mistreatment, the Plaintiff was required to give prison officials fair notice of a First Amendment retaliation claim." *Id*. at *6. True enough, but in the present case, the Plaintiff *did* give prison authorities fair notice of his retaliation claims against Lewis and Fettig by reference to his First Amendment protected activity, followed less than a day later by the adverse rulings at the property hearings. It is this close temporal proximity that the Sixth Circuit in this case found supported the retaliation claims, at least under Fed.R.Civ.P. 12(b)(6), and that likewise support the conclusion that the MDOC had sufficient notice to take corrective action. And, unlike the situation in *Harrington*, the MDOC waived any procedural default by actually considering the facts supporting a retaliation claim.

-10-

The Defendants' affirmative defense of non-exhaustion should therefore be rejected.

## IV.   CONCLUSION

I recommend that Defendants' motion to dismiss [Doc. #51] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

Dated: August 22, 2016


                         CERTIFICATE OF SERVICE

        I hereby certify on August 22, 2016 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants August 22, 2016.

                                        s/Carolyn M. Ciesla
                                        Case Manager for the
                                        Honorable R. Steven Whalen