UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK ANTHONY REED-BEY,

        Plaintiff,

-vs-
                                          No. 13-10168
                                          District Judge Avern Cohn
                                          Magistrate Judge R. Steven Whalen

VICKI LEWIS, ET AL.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

      Plaintiff Mark Anthony Reed-Bey, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), has filed a *pro se* civil complaint under 42 U.S.C. § 1983. Following proceedings on appeal, the Sixth Circuit reversed in part this Court's dismissal of the complaint under Fed.R.Civ.P. 12(b)(6), and remanded for further proceedings limited to Plaintiff's First Amendment claim of retaliation against Defendants Lewis and Fettig. Before the Court at this time is Defendants Lewis and Fettig's Motion for Summary Judgment [Doc. #82], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED as to Defendant Lewis and DENIED as to Defendant Fettig.

# I. FACTS

Plaintiff, an MDOC inmate, was transferred to the Gus Harrison Correctional Facility ("ARF") on or about December 5, 2011. He alleges that Defendant Lewis, a Corrections Officer, told him that he could not keep the Cortech box that contained some of his property, and that the contents of the box would either need to be sent home or destroyed. *Complaint* [Doc. #1], ¶¶ 3,5. Lewis later told Plaintiff that he could not have his property until a hearing was held. *Id*. ¶ 11. Plaintiff alleges in his complaint that a property hearing was held on December 14, 2011, conducted by Defendant Lewis. *Id*. ¶ 12. Plaintiff alleges that at that time, he told Assistant Resident Unit Supervisor ("ARUS") Laing that he (Laing), not Lewis should be conducting the hearing, because Lewis had written the Notice of Intent ("NOI"). *Id*. ¶ 18. According to Plaintiff, Lewis told Laing that Plaintiff's footlocker had an altered number, that a television, radio, and typewriter were also altered, and that Plaintiff had too many cassette tapes. *Id*. ¶ 19. However, Plaintiff alleges that Lewis told him he would be permitted to have the Walkman, the 24 tapes, and some of his legal papers, "but that he was not allowed to take them on that day because they had not completed the hearing...." *Id*. ¶ 20.

Plaintiff alleges that the following day, December 15, 2011, he spoke to Deputy Warden Chapman, and complained "about the fact that defendant Lewis who had written the notice of intent was conducting the hearing and not defendant Laing." *Id*. ¶ 21. Chapman told the Plaintiff that he "would call to find out what was happening which he

did as to plaintiff was standing there." *Id*. ¶ 22. Plaintiff alleges that on December 16th, he was called out for the continuation of the hearing. He alleges that he was "confronted" by Defendant Fettig, who told him he was not getting his footlocker. *Id*. ¶ 23. He claims that Fettig told him that she knew that he had spoken to Deputy Warden Chapman about not wanting Lewis to conduct the hearing, but that "she wanted her to continue assisting." *Id*. ¶ 24. Plaintiff states that "Defendant Lewis took 90% of all the property that was in the plaintiff's duffle bag property...because he had complain[ed] to the Deputy Warden about her illegal actions concerning the hearing." *Id*. Afterward, Plaintiff alleges, he asked Laing about his Walkman and tapes, but was told that Lewis denied that request because "there was nothing showing on his accounting statements where he had purchased a walkman or tapes." *Id*. ¶ 27.

Plaintiff states that around January 10, 2012, he complained to Warden's Administrative Assistant Virgil Webb that Lewis should not have conducted the hearing because she was the person who wrote the NOI to confiscate the property. *Id*. ¶ 31. At this time, Webb told the Plaintiff that on December 16, 2011, Lewis had written a minor misconduct ticket against him, but because Plaintiff had not been given the opportunity to review the ticket, "it wasn't any good." *Id*. ¶ 32. On January 12, 2012, Fettig informed the Plaintiff that she was going to conduct a hearing on his property. Plaintiff alleges that he informed her that he had filed a complaint against her, "and that she was just trying to cover-up her illegal actions." *Id*. ¶ 34.

A property hearing was held on January 12, 2012. However, Plaintiff elected not to attend. *Id*. ¶ 35. The hearing was conducted by Defendant Fettig. *Id*. ¶¶ 34-35. Plaintiff alleges that he did not receive any of the property that was taken. *Id*. ¶ 29.

Attached to Defendants' motion as Exhibit A is the affidavit of Vickie Lewis, an officer in the property room at the Gus Harrison Facility. She states that Plaintiff arrived at the Facility with more property than inmates are permitted to possess, and that on December 6, 2011, she called Plaintiff down to the property room to discuss the issue and to give Plaintiff the opportunity to voluntarily reduce the amount of his property. However, the Plaintiff declined to do so; therefore, she submitted a Notice of Intent to conduct and Administrative Hearing regarding the Plaintiff's property. She also filed a Contraband Removal Record that listed the property. She states that Plaintiff's footlocker had an altered number, which made it contraband. *Lewis Affidavit*, ¶¶ 3-4. Lewis states that on December 14th, ARUS Laing and Plaintiff came to the property room to review the property. At that time, the seals on Plaintiff's cortex box, footlocker, and duffel bag were opened, and she "shook down" the property contained inside. She states that "[t]he entire process could not be completed on December 14 due to time restraints, so the process was continued on December 16. On that date, ARUS Laing was not available, so RUM Fettig attended." *Id*. ¶ 5.

Defendant Lewis states in her affidavit that "[n]o administrative hearing was conducted on December 14 or 16." She wrote a second Contraband Removal Record on December 16th, listing the contraband property discovered during the full "shakedown." *Id*. ¶ 6. Lewis states that it is not her job to conduct administrative hearings, and that her job is to "identify excess and contraband property and write up the appropriate paperwork to ge the prisoner a hearing." She also states that "No administrative hearing was conducted on December 14 or 16. Administrative hearings do not occur in the property room." *Id*. ¶ 7. Lewis states that her knowledge of the actual administrative hearing on January 12, 2012 in FUM Fettig's office is limited to what is contained in the Administrative Hearing Report, and that she has no personal knowledge of or involvement in the administrative hearing. *Id*. ¶ 8. Lewis denies that she told Plaintiff he could possess his Walkman and cassette tapes on December 14, or that she "changed her mind" about him getting that property because he complained to the Deputy Warden about an improper hearing. She also denies knowledge that Plaintiff complained to the Deputy Warden. She states, "In addition, if the plaintiff did complain to Chapman about an improper hearing, his complaint was frivolous because no hearing was conducted in December 2011." *Id*. ¶¶ 9-10. She concludes, "I included the plaintiff's property on the December 16 contraband removal record because it was excessive and many of the items were contraband. Whether the plaintiff complained to Chapman did not affect my decisions, and those decisions and actions would have been the same either way." *Id* ¶

11.  The contraband removal record of December 16th is attached to Defendant Lewis' affidavit.

Attached to Defendants' motion as Exhibit B is the affidavit of Defendant Fettig, now retired, who was a Resident Unit Manager ("RUM") at the Gus Harrison Facility at the time of the events alleged in Plaintiff's complaint.  She states that as a RUM, one of her job duties was acting as a hearing officer at administrative hearings regarding property issues.  *Fettig Affidavit*, ¶ 3.  She states that under MDOC Policy Directive 04.07.112(c), "each prisoner must be able to fit their property into one state-issued duffel bag plus one footlocker if purchased by the prisoner."  *Id*. ¶ 4.  She recounts that on December 6, 2011, Property Room Officer Lewis wrote a Notice of Intent to Conduct and Administrative Hearing regarding Plaintiff's property.  *Id*. ¶ 5.  She states that on December 14, 2011, ARUS Laing and Plaintiff went to the Property Room where Officer Lewis began an unpacking and "shakedown" of Plaintiff's property. She states, "This was not a hearing regarding the property."  However, the process could not be completed that day.  *Id*. ¶ 6.  Fettig states that on December 16 she was present in the Property Room to observe the remainder of the shakedown by Lewis.  She indicates that "[t]he plaintiff here, however, did not agree to a voluntary reduction in property, so the issue had to go to an administrative hearing.  Again, no hearing was conducted on December 16."  *Id*. ¶ 7.

Defendant Fettig states that she conducted a hearing on Plaintiff's property on January 12, 2012. The hearing was conducted in her office, and no other person assisted in conducting the hearing. "At the hearing, the plaintiff stated that the items were his property, and he left the hearing–he chose not to participate." *Id*. ¶ 8.

Fettig states that she was unaware of whether Plaintiff filed a criminal complaint against her, and that Plaintiff did not inform her that he had done so. *Id*. ¶ 9. She states that her ruling at the January 12 hearing "was based solely on policy, which limits the amount of property prisoners may possess," and that even if it were true that Plaintiff had filed some kind of "criminal complaint" against her, her "ruling would have been the same whether he did or did not file such." *Id*. ¶ 5. The December 6, 2011 NOI, the Contraband Removal Record, and the Administrative Hearing Decision are attached to Fettig's affidavit.

Submitted with Plaintiff's response to the Defendants' summary judgment motion [Doc. #84] as Exhibit I are Defendant Lewis' answers to interrogatories. In her answers, Lewis states that she wrote a NOI to conduct an Administrative Hearing for excess property/contraband on December 6, 2011; that no Administrative Hearing was conducted on December 14 or December 16; that the hearing was conducted on January 12, 2012, but she did not assist with or complete any hearing, because that is not part of her job; and that she did not receive a call from Assistant Deputy Warden Chapman on December 15, 2011, concerning what occurred the previous day.

Attached to Plaintiff's response as Exhibit H are Defendant Fettig's responses to interrogatories. She states in her answers that no Administrative Hearing was conducted on either December 14 or December 16, 2011, and that Assistant Deputy Warden Chapman did not contact her; that on "December 18, 2011" [sic December 16], she supervised Plaintiff when he was given an opportunity to voluntarily reduce the amount of personal property in his possession; that no one told her to conduct the hearing on January 12, 2012; that at the hearing on January 12, she found that the property in question exceeded the prisoner property limits set forth in MDOC Policy Directive 04.07.112; that the Plaintiff was provided a hearing "and did not contest that the property was in excess of what is allowed under [the Policy Directive];" and that Plaintiff was given a duffel bag for his clothing and a duffel bag for his legal property.

Attached to Plaintiff's response as Exhibit E are two log book entries from the Property Room. The entry for December 14, 2011 states, "0955 [9:55 am] ARUS Laing in w/ [Plaintiff] for NOI excess property hearing out @ 1045 to resume after count." The entry for December 16, 2011 states, "1207 [Plaintiff[ in w// RUM Fettig for property NOI."

In his complaint, Plaintiff raised a claim of denial of due process regarding the removal of his property, in addition to retaliation. This Court granted Defendants' motions to dismiss for failure to state a claim, under Fed.R.Civ.P. 12(b)(6). On September 24, 2015, the Sixth Circuit affirmed the dismissal of the due process claim, as

well as the dismissal of Defendant Laing, but reversed the dismissal of the retaliation claim against Defendants Lewis and Fettig. This is the only claim pending. Regarding Fettig, the Sixth Circuit stated:

> "Although the basis of [the retaliation] claim is not entirely clear, Reed-Bey appears to argue that Fettig retaliated against him for filing a criminal complaint against her by issuing a decision denying him his property following the January 12, 2012 hearing." *Sixth Circuit Decision* [Doc. #50] at 6.

Finding that Plaintiff has adequately pled the elements of a retaliation claim, the Court stated:

> "He alleged that (1) he engaged in protected conduct by filing a complaint against Fettig and informing Fettig that he had done so; (2) Fettig subjected him to an adverse action when she determined that none of his property would be returned; and (3) there is a causal connection between his protected conduct and the adverse action, as evidenced by the close temporal proximity–less than one day–between when Reed-Bey informed Fettig that he had filed a complaint against her and when Fettig informed him that he would not receive his property." *Id*. at 6-7.

As to Defendant Lewis, the Sixth Circuit stated:

> "Reed-Bey alleged each of the elements necessary for stating a retaliation claim because: (1) he engaged in protected conduct when he complained to Deputy Warden Chapman that Lewis had violated prison policy by participating in the administrative hearings concerning the confiscation of his property; (2) Lewis subjected him to an adverse action when she advised him that she would not be returning his Walkman and cassettes to him, even though she had previously determined that those items were not contraband; and (3) the change in Lewis's decision concerning the Walkman and cassettes was motivated by Reed-Bey's complaint to Deputy Warden Chapman." *Id.* at 8.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the

movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION

In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

#### A. Defendant Lewis

As to the first element of his retaliation claim, Plaintiff states that he engaged in protected conduct when he complained to Deputy Warden Chapman about Defendant Lewis' actions on December 14, 2011. Lewis argues that unlike a written grievance, this verbal complaint did not constitute "protected conduct." *Brief in Support of Motion* [Doc. #82], p. 9. However, the Sixth Circuit in this case has already held that making this verbal complaint was protected conduct, holding that Plaintiff "engaged in protected

conduct when he complained to Deputy Warden Chapman that Lewis had violated prison policy by participating in the administrative hearings concerning the confiscation of his property." Thus, for purposes of summary judgment, the only question as to this element is whether Plaintiff in fact complained to the Deputy Warden. He says that he did, and although the Lewis denies any knowledge of this complaint, she offers nothing to rebut the Plaintiff's factual claim. Plaintiff has satisfied the first element of a retaliation claim.

However, the claim against Lewis falters on the second and third prongs of *Thaddeus-X*. As to the second prong, Plaintiff claims that Lewis took an adverse action against him when she changed her mind about returning his Walkman. This leads to a question as to whether any Administrative Hearings occurred on December 14 or December 16, and whether Lewis participated in the ultimate decision to deprive Plaintiff of his Walkman or any other property.

Lewis states unequivocally that although she wrote a NOI regarding excess and contraband property, (1) no hearing occurred on December 14 or December 16, (2) Administrative Hearings do not occur in the Property Room, and (3) it is not her job responsibility to conduct administrative hearings. Defendant Fettig corroborates these facts in her affidavit and interrogatory responses. In addition, there is only one Administrative Hearing Report, and that is the one that was generated after the January 12, 2012 hearing conducted by Fettig. *See* Plaintiff's Exhibit G. If there was hearing in December, where is the Report? Finally, in Plaintiff's own Exhibit A, Pg. ID 667, a

response to a grievance that Plaintiff filed concerning his property, Resident Unit Manager Evers stated,

> "Upon receiving notice prisoner Reed went to ARUS Laing stating that he could provide proof of owner to the items listed. ARUS Laing took prisoner Reed to the property room and allowed prisoner Reed access to his property *in an effort to allow prisoner Reed to obtain the proof of ownership documentation that prisoner Reed stated he had and would need to prepare for his NOI and class III contraband misconduct hearings*." (Emphasis added).
>
> "On January 12, 2012 RUM Fettig conducted an administrative hearing in accordance with administrative rules 791.3305, 791.3310 and 791.5501."

Plaintiff hangs his hat on the Property Room log notes from December 14 and 16. However, those entries merely indicate that Plaintiff was brought into the property room with regard to a *Notice of Intent* to conduct a property hearing, not for the hearing itself. Given the otherwise unrebutted statements of Lewis and Fettig that no Administrative Hearing occurred in December, and that it was not Lewis' responsibility to conduct property hearings, no rational trier of fact could find that Defendant Lewis held or participated in such a hearing in December of 2011 or at any other time.

Therefore, the only undisputed action that Lewis undertook was to issue the NOI on December 6, 2011. Apart from whether that qualifies as an "adverse action," it predates Plaintiff's complaint to Assistant Deputy Warden Chapman on December 15, the alleged protected activity, and would consequently fail the "causal connection" prong of

*Thaddeus-X*.[1]

The remaining alleged adverse action that is in dispute is Plaintiff's claim that between December 14 and December 16, 2011, Lewis changed her mind about letting Plaintiff have his Walkman. Lewis denies ever telling Plaintiff that he could have his Walkman back, and denies talking to Chapman about Plaintiff's property or knowing that Plaintiff complained to Chapman. However, even assuming that she was aware of the complaint, and even accepting as true Plaintiff's allegation that Lewis told him she would return his Walkman and then changed her mind, where is the adverse action? As discussed above, there was no property hearing in December of 2011, and Lewis' statement that she was in no way involved in the January 12, 2012 hearing is unrebutted. Other than writing a NOI *before* Plaintiff's alleged protected conduct, she had no role in the decision to remove his property.

---

[1] Some alleged "adverse actions" are so insignificant that they will not support a retaliation claim as a matter of law. *See Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002); *Thaddeus-X*, 175 F.3d at 398-99. The ultimate harm of which Plaintiff complains was the removal of his property. A NOI is not an order removing property, nor does it necessarily lead to the removal of an inmate's property. While Lewis may have initiated the process by filing a NOI, the decision to remove Plaintiff's excess property was made by Fettig, not Lewis, after Plaintiff was afforded the opportunity to contest the removal at an Administrative Hearing. Of course, Plaintiff declined to participate in the process by walking out of the hearing room. Given the chronology, however, it is not necessary to decide whether or under what circumstances a NOI constitutes an adverse action in the context of a retaliation claim.

As to the third prong of *Thaddeus-X*, there is not only the absence of an adverse action, but there is no causal connection between Lewis' alleged change of mind and the ultimate decision regarding Plaintiff's property on January 12, 2012.

Because no rational trier of fact could find in Plaintiff's favor on the retaliation claim against Defendant Lewis, she should be granted summary judgment.

### B.    Defendant Fetting

Defendant Fettig presents a closer question. The Sixth Circuit has already found that Plaintiff "engaged in protected conduct by filing a complaint against Fettig and informing Fettig that he had done so," and that "Fettig subjected him to an adverse action when she determined that none of his property would be returned." *Sixth Circuit Decision* [Doc. #50] at 6-7. Thus, Plaintiff has satisfied the first two prongs of *Thaddeus-X*.

As to the third prong, the Sixth Circuit found that *for purposes of a Rule 12(b)(6) motion to dismiss*, " the close temporal proximity–less than one day–between when Reed-Bey informed Fettig that he had filed a complaint against her and when Fettig informed him that he would not receive his property" plausibly supported a claim that there was a causal connection between the protected activity and the adverse action. *Id*. But the case the Sixth Circuit cited–*Top Fligh Entm't, Ltd. v. Schuette*, 729 F.3d 623 (6th Cir. 2013)–did not extend any *per se* rule to subsequent motions for summary judgment: "[A]lthough temporal proximity may not be enough to ultimately sustain Plaintiffs'

allegations, it is sufficient at this stage to render Plaintiffs' claims plausible." *Id*. at 632. To the contrary, evidence of temporal proximity alone is generally *not* sufficient to support an inference of causation at the summary judgment stage. *See Powell-Kirby v. Spectrum Health*, 920 F. Supp. 2d 803, 807 (W.D. Mich. 2013)("While temporal proximity is an indicator of a causal connection, the Sixth Circuit has repeatedly held that temporal proximity, without other evidence of retaliatory conduct, is generally insufficient to establish the required causal connection for a retaliation claim")(citing *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir.2007)). Yet, every rule has its exceptions, and here there is an exception to principle that a plaintiff must show something more than temporal proximity to support a finding of retaliation exists where the adverse action occurs extremely close in time to the protected conduct. In *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir.2004), the Sixth Circuit stated:

> "In fact, this Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise. See, e.g., *Brown v. ASD Computing Ctr.*, 519 F.Supp. 1096, 1116 (S.D.Ohio 1981) ('where there is no direct proof of a retaliatory motive, retaliation may be imputed if the timing of the retaliatory act is such as to allow an inference of retaliation to arise'), aff'd sub nom. *Brown v. Mark*, 709 F.2d 1499 (6th Cir.1983)."

And in *Mosholder v. Barnhardt*, 2010 WL 5559406 (E.D. Mich. 2010), the Court, noting that "Sixth Circuit case law suggests that temporal proximity may be enough to establish causation if the events are particularly close in time," *id*. at 9, found that "[t]he closer in

time the adverse action occurs to the protected activity, the more reasonable is the argument that a jury could find, first, that temporal proximity has been proven to exist under the circumstances, and, second, that the proven proximity is 'very close' so as to permit it, standing alone, to establish the necessary causal connection." *Id*. at 12.

As the Sixth Circuit noted in this case, the time between when Plaintiff told Fettig he had filed a complaint against her and when she issued an Administrative Decision depriving him of his property was less than one day. It is this "very close" temporal proximity between the two events that creates an inference of causation sufficient to present a question of fact for the jury. And while Fettig states in her affidavit that she would have taken the same action regardless of whether Plaintiff had filed a complaint, "it is not enough for the defendant to 'deny the allegations put forth by the plaintiff[ ].'" *Hazel v. Quinn*, 933 F. Supp. 2d 884, 890 (E.D. Mich. 2013), quoting *Thaddeus-X*, 175 F.3d at 399. Summary judgment should therefore be denied as to Defendant Fettig.

### IV. CONCLUSION

I recommend that Defendants Lewis' and Fettig's Motion for Summary Judgment [Doc. #82] be GRANTED IN PART AND DENIED IN PART, specifically that it be GRANTED as to Defendant Lewis and DENIED as to Defendant Fettig.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: August 28, 2017                    s/R. Steven Whalen
                                          R. STEVEN WHALEN
                                          UNITED STATES MAGISTRATE JUDGE

# CERTIFICATE OF SERVICE

I hereby certify on August 28, 2017 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants August 28, 2017.

s/Carolyn M. Ciesla
**Case Manager for the**
**Honorable R. Steven Whalen**